## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ALBERT MERGET,

        Plaintiff,                         CASE NO: 03-60896-CIV-MARRA

v.

GENE MOSS, individually and
THE KENSINGTON ASSOCIATES, a
Florida general partnership, d/b/a
THE KENSINGTON,

        Defendants.

_____/

## MOTION TO STRIKE COMPLAINT PURSUANT TO FED. R CIV. P. 12(f), OR ALTERNATIVELY, TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), 8(e)(1), 8(a), 12(b)(1), MOTION FOR INJUNCTION TO HALT REPEATED SERVICE OF PROCESS, AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Defendants GENE MOSS, individually and THE KENSINGTON ASSOCIATES, a Florida general partnership (collectively, hereinafter, "THE KENSINGTON"), by and through their undersigned counsel and pursuant to the Federal Rules of Civil Procedure, file this Motion to Strike Complaint Pursuant to Fed.R.Civ.P.12(f), or Alternatively, to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), 8(e)(1), 8(a), 12(b)(1), Motion for Injunction to Halt Repeated Service of Process, and Incorporated Memorandum of Law, and as grounds therefore state:

### I. FACTUAL BACKGROUND

On November 15, 2000, Plaintiff ALBERT MERGET ("MERGET"), leased Apartment 14T of The Kensington, a fifteen story ocean front apartment complex located in Lauderdale by the Sea, Florida. A copy of the Lease entered into between the parties is attached to MERGET's Complaint at Exhibit A. MERGET's tenancy was troubled, characterized by fantastical claims of being "poisoned" by neurotoxins, "assaulted" by paint fumes, "trespassed" upon by second hand smoke,

etc. (MERGET Complaint, paragraphs, *inter alia*, 50, 55, 56-60 ). In January of 2003, MERGET abandoned his apartment, breaching the Lease with THE KENSINGTON (MERGET Complaint, paragraph 75). The Lease will expire by its own terms on June 30, 2003.

Shortly after abandoning the Lease, MERGET filed various complaints regarding his tenancy with the Florida Department of Agriculture & Consumer Services, Broward County Department of Consumer Affairs, the United States Department of Housing and Urban Development, the United States Justice Department, and possibly others unknown to Defendants at this time. (MERGET Complaint, paragraph 63). The complaints filed by MERGET center principally on MERGET's anger over the failure of THE KENSINGTON to immediately turn over his security deposit, as well as his aforementioned complaints over the "neurotoxins/paint fumes/second hand smoke" mentioned above. However, MERGET attempts to fortify at least some of these claims with a curious, newfound and presumably more potent allegation: racial discrimination.[1]

On April 30, 2003, THE KENSINGTON brought an action in the County Court in and for Broward County, Florida, seeking damages relating to MERGET's breach of lease. Thirteen days later, on May 13, 2003, MERGET responded to the state court action by filing the instant action in the Southern District of the United States District Court. The MERGET Complaint is fifty two

---

[1] The claims are meritless and self contradictory on their face. For example, MERGET substantiates his claims of racial discrimination by way of the allegation that "he never saw a black at the pool nor saw a black employee". (See Paragraph 39 of MERGET Complaint) Thereafter, however, MERGET contradicts his claim by admitting that THE KENSINGTON has, in fact, black residents, (asserting only that the percentage of black residents residing at THE KENSINGTON "is not representative of the Broward County or Pompano Beach Community.") See Paragraph 126 of MERGET Complaint. Defendant would note that the current U.S. Census of Population and Housing shows the black, non-hispanic population of Lauderdale By The Sea to be 7 of its 2887 residents, or .002 % of its total population. Accordingly, one black resident at THE KENSINGTON equates to 14% of the total population of black, non-hispanics living in Lauderdale By the Sea.

pages long (excluding attachments), contains twenty one counts, and alleges, *inter alia*, damages relating to MERGET's claims of injury from neurotoxin/paint fumes/second hand smoke, racism, etc.

Since filing his action in this Court, MERGET has also filed a "Motion to Enjoin Defendant's Move to Split Venue", a "Motion for Default Judgment and Sanctions".[2]   In the state court action, MERGET has filed a "Motion for Merger with Pending Federal Litigation in the Southern Dist. Of Florida", as well as other filings.   More troubling, however, MERGET has, in what appears to be an attempt to harass the Defendants, caused them to be personally served with the same, original complaint, on not less than four different occasions (and counting).   The dates of service are June 9, 2003 at 3:40 p.m., June 11, 2003 at 9:40 a.m., June 11, 2003 at 3:50 p.m., and June 18 at 6:50 a.m., as shown by copies of the Summons served attached hereto as Composite Exhibit "A".

## II. DISCUSSION OF AUTHORITY

### 1.   Motion to Strike (Rule 12(f))

Before a responsive pleading, or if no responsive pleading is permitted, a party may move to strike any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." See Fed. R. Civ. Pro. 12(f).   Even a cursory review of the subject Complaint reveals it to be replete with redundant, immaterial, impertinent and scandalous allegations.   Indeed, the breadth and scope of the improper allegations cannot be understated.   Selected excerpts are listed below:

a.   Paragraph 3.  " This (the Kensington) white ghetto..."

---

[2] Which Motion incorrectly seeks a default predicated on service attempted through Fed. R. Civ. P. 4(d).

3

b.      Paragraph 6. "..the scoflaw landlord, Gene Moss..."

c.      Paragraph 7.    "Mr. Moss prefers vacant apartments to renting them to blacks or families with children."

d.      Paragraph 11. "Plaintiff is traumatized by the blatant racism and lawlessness that Gene Moss uses to pollute the Southeast Florida housing market."

e.      Paragraph 12. "Gene Moss has spent the last thirty or more years of his life evading the law and undermining the efforts of the courts and the public schools to encourage social & economic mobility."

f.      Paragraph 13. "Gene Moss is very politically active."

g.      Paragraph 14. "...Moss hosted a campaign rally for only one mayoral candidate. Moss denied the residents of the Kensington the right to hear the candidate that Moss did not support."

h.      Paragraph 15. "Moss uses his money to influence Broward County government and supports local candidates for the judiciary".

i.      Paragraph 16. "Moss has influence with local law enforcement officials, including police and building code enforcers."

j.      Paragraph 18. "The Kensington Enterprise is a 15 story fire trap that unnecessarily risks the lives of its vulnerable, largely elderly population."

k.      Paragraph 19. "Moss inherited the Kensington and is a millionaire."

l.      Paragraph 20. "Moss can well afford to install life saving sprinklers."

m.      Paragraph 21. "The fire alarm system..frequently malfunctioned"

n.      Paragraph 22. "Moss uses his political influence to avoid the fire and building codes,

4

under color of law"

o.      Paragraph 23. "The Kensington enterprise did not come to be a tower of apartheid by accident..."

p.      Paragraph 38. "...maintaining the illegal apartheid..."

q.      Paragraph 41. "The Kensington dominates the rental market in ocean front Broward."

r.      Paragraph 69. "Anecdotal and circumstantial evidence from residents at the Kensington indicate that Moss is fond of suing the estates of deceased tenants and leasing their apt. to others and collecting double rents."

s.      Paragraph 70. "Moss is a prolific, frivolous and vexatious litigator and abuser of process."

t.      Paragraph 73. "Moss's extortionate mailings..."

u.      Paragraph 78. "On or about June...an eighty year old women that Moss had been harassing jumped to her death from the fifteenth floor of the Kensington."

v.      Paragraph 79. "When...tenants lose their eyesight or become frail or vulnerable, Moss exploits them...Moss is a despot who routinely preys on older Americans by coercing the weak and legally unsophisticated"

w.      Paragraph 80. "Moss has frivolously sued the estates of . . ."

x.      Paragraph 81. "(Moss) is waiting to ambush my heirs if I do not seek injunctions against Moss now, while I can still type."

y.      Paragraph 83. "Plaintiff is a white man who learned much from black colleagues in and blacks students in the inner city..Moss is repulsive and it would be hypocritical

5

for me not to complain of this citadel of repression."

z.      Paragraph 85.  "...predatory control..."

aa.     Paragraph 90.  "...trained & supervised a full time painter who was a chain smoking tobacco addict..."

bb.     Paragraph 101.  "...scheme to defraud, humiliate, torture, vilify & coerce plaintiff to further the racketeering goals of Moss & abettors."

cc.     Paragraph 113.  "Moss formed a sham partnership to evade liability a seek respectability while hiding in the business environment, like a fifth column."

dd.     Paragraph 118. "Moss also made sure that Moss's despotic defacto local government operated under color of law to deprive Merget and other law-abiding whites & blacks of the right to live in racial harmony."

ee.     Paragraph 119.  "Moss...provided said painter with an apartment so that he could send second hand smoke into Kensington apts., all day and all night..Moss discriminates against blacks and asthmatics."

ff.     Paragraph 124.  "Gene Moss, defendant landlord & scoflaw...We have seen how boldly he ignores Chapter 83 of the Florida Statutes...".

gg.     Paragraph 125.  "Moss is well aware of the federal regulations that he violates at his white ghetto, the Kensington."

hh.     Paragraph 129.  "Elder abuse need not be overly physical; it often is emotional & financial as practiced by Gene Moss."

ii.     Paragraph 138.  "While using creative and sham bookkeeping practices to unjustly bill the plaintiff, Moss also runs afoul of the I.R.S. which depends on accurate

records to collect taxes.   By generating and maintaining deceptive accounts receivable data, Moss misrepresents earnings."

jj.     Paragraph 139.  "...defrauded the Plaintiff & misled lenders and investors & cheated government agencies that rely on honest business records..."

kk.     Paragraph 144.  ". . . scoflaw defendant Moss. . . ."

ll.     Paragraph 148.  "Microscopic pathogens & CARCINOGENS (sic) can be as deadly as bullets."

mm.     Paragraph 162.  "Gene Moss is a malicious schemer. . . ."

nn.     Paragraph 163.   Moss carefully recruited and trained an unscrupulous building manager...to aid & abbet (sic) Moss in seeking out vulnerable older Americans with assets Moss might loot."

oo.     Paragraph 168.  "Moss & Duhaime are motivated by boundless greed, racism, disdain for children & vulnerable elders & a desire for illicit money. Moss & Duhaime utilize the Kensington enterprise to further their illegal intentions."

pp.     Paragraph 171.  "The blatant, callous and continuing nature of Moss's conspiracy requires penalties that will deter Moss & other criminals from this repetitive misbehavior that shocks civilized society.   A small fine would be a slap on the wrist..."

qq.     Paragraph 172.  "The Kensington has the population of many small cities, without an accountable government and no due process.  Moss is king for life with no checks or balances."

rr.     Paragraph 175.  "When Moss made the above threats upon the plaintiff, Moss was

7

obstructing justice and tampering with a governmental informant..."

ss.     Paragraph 176. "The defacto governor of the Kensington, Gene Moss..."

tt.     Paragraph 177. "Gene Moss & Associates have practiced a scheme to dominate the ocean front Broward County rental market..."

uu.     Paragraph 186. "Moss knows that HUD has no enforcement powers & depends on shortstaffed (sic) U.S. Attorneys."

vv.     Paragraph 192.  "Attorney Michael Hamaway on 04/14/03 on behalf of the defendants & with intent to defraud." "Hamaway did also misrepresent the landlord tenant law, with the intent to deceive and enable the defendants scheme to continue."

ww.     Paragraph 193. "Defendants acted in bad faith & with an intent to deceive when they conspired with Hamaway to misled (sic) the Fla. state consumer investigators."[3]

xx.     Paragraph 207. "Defendant Moss is enraged that the plaintiff has informed on Moss & plaintiff prays that the Court recognize the plaintiff as a government informant..."

yy.     Paragraph 211. "Defendants made deliberate, hostile, reckless & wanton steps that created an unnatural & unhealthy bigoted living arrangement that injured plaintiff and other members of said class."

---

[3] MERGET continued references to the undersigned, personally, relate to THE KENSINGTON'S response to a Department of Business and Professional Regulation (DPBR) letter of inquiry relating to MERGET's alleged failure to receive notice of a claim to his security deposit. (Exhibit (6) to MERGET Complaint) MERGET originally filed this complaint with the Broward County Consumer Affairs Division, seeking relief relating to his security deposit, and various undefined acts of racism.  However, the division declined to process the complaint, determining the subject matter (his rental deposit) to be within the purview of the Department of Business and Professional Regulation (DPBR).  DPBR reviewed the complaint and solicited a response from THE KENSINGTON.  After reviewing the Kensington's response, DPBR closed its file on the complaint.

zz.     Paragraph 213. ". . . scoflaw landlord Moss. . . ."

### A.     Irrelevant matters.

A motion to strike may be granted where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." See *LeDuc v. Kentucky Central Life Ins. Co.,* 814 F.Supp 820, 830 (N.D. CA 1992).  The paragraphs listed above, and others, have no possible bearing on the subject matter of the litigation and should be stricken.

### B.     Redundant, immaterial, impertinent and scandalous matter.

"Redundant" has been defined as including allegations that are wholly foreign to the issues involved or the needless repetition of allegations. *Gilbert v. Eli Lily Co., Inc.* 56 F.R.D. 116. (D. Puerto Rico 1972). "Immaterial" means the matter has no bearing on the controversy before the court. "Impertinent" has been defined to include allegations that are not responsive or relevant to issues involved in the action, that would lead to unwarranted and prejudicial inferences, and which could not be admitted as evidence in the action. *Fantasy, Inc. v. Fogerty*, 984 F.2d. 1524, 1527 (9th Cir. 1993) (judgment reversed on other grounds, *Fogerty v. Fantasy, Inc.*, 509 U.S. 903). "Scandalous" has been defined as allegations that cast a "cruelly derogatory light on a party or other person". *Skadegaard v. Farrell,* 578 F.Supp. 1209 (D. N.J. 1984); See, *Talbot v. Robert Mathews Distributing Co.,* 961 F.2d 654,665 (7th Cir. 1992), wherein allegations that milk distributor intentionally caused outbreak of salmonella in order to consummate fraudulent scheme against route drivers held subject to motion to strike as "scandalous".

### C. Excessive Evidentiary Allegations

While some evidentiary allegations may be necessary to supply background or context, to the extent that those evidentiary allegations are unduly prejudicial to a defendant and would be

9

burdensome to answer and would unduly prejudice defendants, they may also be appropriately

stricken. *In re "Agent Orange" Product Liability Litigation*, 475 F.Supp. 928, 935 (E.D. N.Y. 1979).

### D.      Improper demand or prayer.

A motion to strike may also be used to strike the prayer for relief where the damages sought

are not recoverable as a matter of law. *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559 (8th

Cir. 1974).

To the extent that the allegations contained within the Complaint can be construed as prayers

for relief (MERGET Complaint paragraphs 121, 123, 136, 144, 153, 152, 189, 201, 202, 205, 206,

207, 227, 228, 229, 230 ) the paragraphs improperly commingle remedies, seek excessive damages,

or damages which are either in whole or in part, not recoverable as a matter of law. Accordingly,

they should be stricken. See, *Tapley, supra.* See also, *Bureerong v. Uvawas* 922 F. Supp. 1450,

1479 (D.C. CA. 1996), striking a prayer for damages in a wrongful death action exceeded the

maximum permitted by statute.

### E.      Conclusion.

In applying the foregoing authority to the face of the pleading before this court, each of the

allegations listed in paragraph a - zz, together with paragraphs 121, 123, 136, 144, 153, 152, 189,

201, 202, 205, 206, 207, 227, 228, 229, 230, should be stricken. The allegations, often rambling and

nonsensical, can not be said to have any possible bearing on the subject matter of the litigation,

which is MERGET's apparent belief that he was constructively evicted. Nearly all of the allegations

are repetitive, restating the same conclusions and accusations in successive paragraphs, each

different only in its more florid prose. Nearly every allegation in the Complaint is stained by lurid

and derogatory accusations which could never be admitted into evidence or presented to a jury. The

allegations of the Complaint should be stricken as scandalous and impertinent. There being little or no part of the Complaint that would remain after striking the allegations, the Complaint itself should be dismissed.

### 3.  Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted (Rule 12(b)(6)).

#### A.  Motion to Dismiss "First Cause of Action: Tortious Breach of Duty of Good Faith & Fair Dealing Arising out of a Contract"

No independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing. More specifically, a cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract; or (b) in the absence of breach of an express term of the underlying contract. See *Burger King Corp. v. Weaver* 169 F.3d 1310 (11th Cir. 1999).

#### B.  Motion to Dismiss "Second Cause of Action: Defamation by Letter Dated March 3, 2003"

The elements of a cause of action for defamation under Florida law are: (1) the defendant published a false statement of fact, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to the plaintiff. See, *Bass v. Rivera* 826 So. 2d 534 (Fla 2nd DCA 2002).

The March 3, 2003 letter, attached to MERGET's Complaint as Exhibit B, is a cover letter which: (1) summarizes the results of the consultant's investigation, and (2) expresses an opinion relating to the results of the investigation. It contains no language which could be characterized as "false" or which could otherwise ground a claim for defamation. Moreover, THE KENSINGTON's act of dictating the contents of the subject letter to its secretary does not, under Florida law, constitute an actionable publication to a "third party." See, *Schreidell v. Shoter*, 500 So. 2d 228 (Fla.

11

3rd DCA 1987), wherein the defendant in a defamation action testified that he "may have been overheard by the secretary." In ruling that the communication to a secretary was not actionable under Florida law, Florida's Third District Court of Appeal held that a qualified privilege extends to the reasonable use of clerical personnel in the transmission of privileged communications, as well as to incidental publication thereof to employees or associates of either the sender or receiver, provided that such incidental publication is in the usual course of business and is reasonably necessary to effect the communication of the privileged matter to those entitled to receive it.

### C.      Motion to Dismiss "Third Cause of Action: False and Defamatory Invoice"

No claim upon which relief may be granted exists in Florida for "False and Defamatory Invoice". The elements of defamation are stated in Section B, *supra*. See, generally, *Bass v. Rivera* 826 So. 2d 534 (Fla 2nd DCA 2002). The subject invoice contains no extraneous writing outside of the billing information, and cannot therefore be considered to be a false statement of fact affecting MERGET.      MERGET may dispute the invoice, but he cannot claim that the invoice itself "defamed" him.

### D.      Motion to Dismiss "Fourth Cause of Action: Fraudulent Promise to Cover the HVAC Registers While Painting"

No claim upon which relief may be granted exists for "Fraudulent Promise To Cover The HVAC Registers While Painting".

In addition, MERGET has failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). Allegations that are vague or conclusory are insufficient to satisfy the "particularity" required by Rule 9(b). See, *Smith v. Ayres*, 845 F.2d 1360, 1365 (5th Cir. 1988). See, also, *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985), wherein allegations that "at places and dates unknown

to plaintiff...defendants *conspired and developed a scheme to cheat plaintiff out of his interest* in the Black Corporation" (emphasis added), were found to be too conclusory to satisfy the requirements of Rule 9(b).

Perhaps more importantly, MERGET's allegations of fraudulent promises are fatally contradicted by the attachments to his own Complaint. A copy of a written instrument attached as an exhibit to a pleading is "a part therefore for all purposes." Fed. R. Civ. P. 10(c). The Lease attached to MERGET's Complaint is dated November 15, 2001, and the alleged "fraudulent promise" occurred October 28, 2002, nearly a year later. Therefore, not even an implied cause of action for the recognized claim of fraudulent inducement could be said to exist because MERGET had already executed the lease when the alleged "fraudulent promise" occurred. Finally, Paragraph 29 of the Lease, captioned "Entire Agreement", states that the parties to the Lease contracted that the Lease would be sole and exclusive expression of their agreement, superceding any oral or written representations to the contrary. Accordingly, the attachment creates a repugnancy, fatally contradicting the allegations of the Complaint.

### E.   Motion to Dismiss "Fifth Cause of Action: Retaliation"

No claim upon which relief may be granted exists in Florida for "Retaliation". In fact, the two paragraph count (108 - 109) is so conclusory and incoherent that the Defendants cannot even direct this Court to the elements for an *intended* cause of action. The allegations create no cognizable claim for relief, either express or implied. Count Five should be dismissed.

### F.   Motion to Dismiss "Sixth Cause of Action: Libel per Se"

The six paragraph count (110 - 115) for "Libel Per Se" contains only conclusory and incoherent allegations which create no cognizable claim for relief. Count Six should be dismissed.

13

**G.     Motion to Dismiss "Seventh Cause of Action: Discrimination Based upon Familial Status, 42 U.S.C. § 3601"**

Plaintiff, MERGET, lacks standing to bring an action for discrimination on the basis of familial status pursuant to 42 U.S.C.A. 3601 *et. seq.* (the "Fair Housing Act").

The determination of whether MERGET has standing to sue is guided by the United States Supreme Court decision of *Havens Realty Corporation v. Coleman,* 455 U.S. 363 (1982), which states that the "sole requirement for standing to sue under § 812 is the Art. III minima of injury in fact - - that the plaintiff allege that as a result of the defendant's actions *he has suffered* a distinct and palpable injury" (quoting from *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed. 2$^d$ 66 (1979) (emphasis added). MERGET's Complaint fails to meet this threshold. Through 231 paragraphs, MERGET, a sixty-year-old, white male, without minor children,  fails to make even a single allegation of fact where he himself suffered the distinct and palpable injury necessary to state a claim under the Fair Housing Act.[4]  As stated in *Gladstone*, 441 U.S. at 103, the central issue at this stage in the proceeding is not who possesses the legal rights protected by (the Act), but whether respondents *were genuinely injured* by conduct that violates someone's rights. . . (emphasis added).

In the case sub judice, MERGET has failed to plead any instance where he himself has been genuinely injured.  Over and over again, MERGET hurls allegations, each time missing the mark required to establish an actual injury.  The closest the Complaint comes is the evidentiary allegation at Paragraph 10 of the Complaint, wherein MERGET alleges that "on or about January 20, 2003,

---

[4] Pursuant to 42 USCA § 3602 (k) "familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent; (2)the designee of such parent..."

Gene Moss told MERGET that he should find a sub-tenant, but "no blacks or children".[5] However, even this allegation is speculative, suggestive of an injury that might happen in the event MERGET performed certain predicate acts needed to trigger them. The balance of the other racially tinged allegations, such as, MERGET's failure to seek blacks at the pool, fail to even infer an actual injury, and are so meritless, conclusory and devoid of substance as to require no further response.

Like the white "tester" in *Havens Realty Corporation v. Coleman* 455 U.S. 363 (1982), MERGET may have perceived that he would suffer some injury from THE KENSINGTON that violated the Fair Housing Act, but this is not a substitute for the "actual injury" that he is required to plead. Insofar as MERGET has failed to plead any actual injury to him in violation of the statute, he lacks the minimum standing to complain of injuries affecting others (to which the balance of the remaining "injury" allegations are directed). Accordingly, those claims (either actual or implied) intended to be brought under the Fair Housing Act should be dismissed.

**H.     Motion to Dismiss "Eighth Cause of Action: Inducing Breach of Contract"**

There is no claim upon which relief may granted for "Inducing Breach of Contract".

This count sounds in MERGET's complaints over "the tobacco addicted painter." It contains components of "conspiracy", "assault" (by "invoices that Moss uses as weapons"), violations of Title III of the ADA ("...send second hand smoke...all day and all night...discriminates against blacks and asthmatics..."), etc. The count is conclusory and incoherent, and no implied cause of action can be gleaned from it. Count Eight should be dismissed.

---

[5] THE KENSINGTON unequivocally denies the painfully insulting and baseless allegation.

I.      **Motion to Dismiss "Ninth Cause of Action: Indemnity"**

This one paragraph cause of action (Paragraph 121) contains components of claims for negligence, fiduciary breach, undefined criminal conduct, unjust enrichment, etc.   The count is conclusory and incoherent, and no implied cause of action can be gleaned from it.   Count Nine should be dismissed.

J.      **Motion to Dismiss "Tenth Cause of Action: Negligence"**

The elements of cause of action for negligence under Florida Law are: (1) duty; (2) breach of duty; (3) causation; and (4) damages.  See *Miller v. Foster,* 686 So. 2d 783 (Fla. 4th DCA 1997). MERGET's count for "negligence" fails to establish the necessary of causation.   In addition, although MERGET articulates that THE KENSINGTON has a duty to "exercise care in the advertising, maintenance, leasing and hiring at THE KENSINGTON", he fails to allege sufficient acts constituting a breach. Count Ten should be dismissed.

K.      **Motion to Dismiss "Eleventh Cause of Action: Discrimination in Housing Motivated by Race, Per Se"**

The two paragraph count generally references "that Moss is well aware of the federal regulations" that (Moss) violates at his white ghetto, the Kensington".  The allegation is insufficient to state a claim upon which relief may be granted.   To the extent that the Fair Housing Act is referenced in Paragraph 125, Defendants would refer this Court to Section G of the memorandum addressing MERGET's failure to establish an "actual injury".   For the foregoing reasons, Count Eleven should be dismissed.

L.      **Motion to Dismiss "Twelvth (Sic) Cause of Action : Consumer Fraud, per Se"**

Paragraphs 126 - 127 are conclusory and incoherent.   Allegations that are vague and

conclusory are insufficient to satisfy the "particularity" required by Rule 9(b).  See *Smith v. Ayres,* 845 F.2d 1360, 1365 (5th Cir. 1988).  In addition, the paragraphs contain references to not less than five separate Federal statutes, none of which are implicated by the actual allegations contained within the paragraphs. No claim upon which relief may be granted can be said to exist or could be implied as to Count Twelve.  Count Twelve should be dismissed.

**M.**     **Motion to Dismiss "Thirteenth Cause of Action: Elder Abuse"**

Defendants move to dismiss this Count for failure to state a claim upon which relief can be granted and for insubstantial federal question.

42 U.S.C.A. § 3001, *et. seq.* ("The Older Americans Act") does not create an independent cause of action.  See, *Palmer v. Ticcione,* 433 F. Supp 653 (E.D. N.Y. 1977), wherein a plaintiff's action under the Older Americans Act was dismissed for lack of a substantial federal question.  As stated by the *Palmer* court, "a federal policy (The Older Americans Act) falling short of a constitutional mandate does not provide a basis for relief."

No claim upon which relief may be granted has been asserted, nor can one be implied.  Count thirteen should be dismissed.

**N.**     **Motion to Dismiss "Fourteenth Cause of Action: Maintenance of Bogus & Deceptive Business Records", 18 USC Chapter 63 (Sic)"**

Title 18 of the Unites States Code entitled "Crimes and Criminal Procedure" contains two discrete sub-parts, "crimes" and "criminal procedure".  Chapter 63 of Title 18 is entitled "Mail Fraud".  Title 18 provides no independent basis for civil relief.

The remaining paragraphs contained within the fourteenth cause of action are, once again, conclusory and incoherent, mixing statutes, novel legal theories and personal insults.  No cause of

17

action can be asserted or implied from them, and the count should be dismissed.

      **O.**    **Motion to Dismiss "Fifteenth Cause of Action: Assault & Battery with Noxious Chemicals and Toxins."**

No claim upon which relief can be granted exists for "assault and battery with noxious chemicals and toxins."

Count Fifteen, like Count Eight before it, centers primarily on MERGET's legal theory that "microscopic pathogens and CARCINOGENS (sic) can be as deadly as bullets" and that MOSS should be found to be liable to MERGET because "Moss decided to hire, retain, and negligently train and supervise a painter who kills his neighbors with second hand tobacco smoke". The foregoing examples are representative of the character of the balance of allegations within Count Fifteen, and are by no means exhaustive. The paragraphs are conclusory and incoherent, and no cause of action can be asserted or implied from them. Count Fifteen should be dismissed.

      **P.**    **Motion to Dismiss "Sixteenth Cause of Action: Intentional Infliction of Emotional Distress."**

Under Florida law, liability for intentional infliction of emotional distress will lie only where the conduct in question has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. See, *Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla.1985). To state a claim for intentional infliction of emotional distress under Florida law, the following four elements must be shown: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiff's severe emotional distress. See, *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir.), *cert. denied,* 498

U.S. 980, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990). Few cases applying Florida law have upheld claims of this type.  See *Williams v. City of Minneola*, 575 So.2d 683 (Fla. 5th DCA), *rev. denied,* 589 So.2d 289 (Fla.1991) (claim upheld where police officers displayed "grotesque" pictures of a family member's dead body); *Dependable Life Insurance Co. v. Harris,* 510 So.2d 985 (Fla. 5th DCA 1987) (claim upheld where disability insurer wrongfully withheld insurance payments and made "vicious verbal attacks" and threats to policyholder known to be ill and near bankruptcy).

MERGET herein has failed to allege the requisite elements necessary to state a claim upon which relief should be granted and, accordingly, Count Sixteen should be dismissed.

**Q.      Motion to Dismiss "Seventeenth Cause of Action: Defective Design, Building Habitability."**

There is no claim upon which relief can be granted for "Defective Design, Building Habitability".

Paragraphs 154 - 161 state, in summary, that MERGET paid rent, expected "luxury and comfort", freedom from fire alarms, and, as a result of MOSS's alleged refusal to install fire sprinklers, MERGET suffered nightmares.  No claim for relief is stated by the allegations, and no claim of relief can be inferred from them.  Count Seventeen should be dismissed.

**R.      Motion to Dismiss "Eighteenth Cause of Action: Racketeering Influenced & Corrupt Organizations Act, RICO, 18 U.S.C. § 1964 (c) Mail Fraud & Wire Fraud, § 1341 , 1343, & 1344 , Fla. § 775.0844, chapters 812, 815, 817, 825, 831, 896 (sic)"**

**1. Failure to comply with Local Rule 12.1**

Thirty days have elapsed since the filing of this action, and Plaintiff has not complied with Local Rule 21.1, which requires that a RICO statement be filed within thirty days of filing a complaint.  See *Robert D. Pierce v. Ritter, Chusid, Livonia & Cohen*, 133 F.Supp 2d 1344 (S.D.

Fla. 2001), wherein litigants failure to timely file RICO case statement warrants dismissal of claims under RICO and state statutes.

### 2. Failure to plead RICO standing

Despite his attempt to do so, Plaintiff has failed to plead any (actual) underlying criminal activity for purposes of establishing a federal RICO count.  RICO standing must be pled.  See *Imagineering, Inc. v. Kiewitt Pac. Co.*, 976 F.2d 1303 (9th Cir. 1992).  MERGET has failed to properly plead the standing to bring an action under the Racketeering Influenced and Corrupt Organizations Act.  Moreover, Paragraphs 162 - 213 are so replete with incoherent, rambling, accusatory and meaningless allegations so as to prevent any substantive response. Count Eighteen should be dismissed.

**S.**   **Motion to Dismiss "Nineteenth Cause of Action: Landlord's Failure to Permit an Ethnically and otherwise diverse Community, RES IPSA LOQUITOR (sic)"**

There is no claim upon which relief can be granted for the above stated cause of action.

MERGET's Nineteenth cause of action is a menagerie of claims sounding in tort, conspiracy, statutory causes of action, etc.  No cause of action is either stated or implied by the claims, and the Count should be dismissed.

**T.**   **Motion to Dismiss "Twentieth Cause of Action: Abuse of Process, per se, Based upon Violation of Federal & Florida Statutes.**

MERGET fails to state a claim upon which relief may be granted for "Abuse of Process, per se, based upon violation of Federal and Florida Statutes."

A cause of action for "abuse of process" consists of willful or intentional misuse of process; willful and intentional misuse of it for some wrongful or unlawful object, or ulterior purpose not

intended by law.  See, *Cline v. Flagler Sales Corp.* 207 So. 2d 709 (3rd DCA 1968).

MERGET's twentieth cause of action is based on MERGET's claim that THE KENSINGTON failed to comply with various statutes relating to the South Florida Building Codes, etc.  Again, the allegations are so vitriolic, and lacking in substance, as to render them impossible to reply to.  No cause of action is stated, and none can be inferred, by Count Twenty of MERGET's Complaint.  Count Twenty should be dismissed.

### U.   Motion to Dismiss "Twenty-first Cause of Action: Negligence Based on the Doctrine of Res Ipsa Loquitor"(sic).

Florida courts have established three requirements for application of *res ipsa loquitur*: (1) instrumentality involved must be within exclusive control of defendant both as to operation and inspection; (2) injury must not be result of voluntary action or contributory negligence on part of plaintiff; and (3) accident must be such that it would not have occurred had defendant used due care. *Commercial Union Ins. Co. v. Street*, 327 So. 2d 113 (2nd DCA Fla. 1976).

MERGET has failed to state a claim upon which relief can be granted for negligence pursuant to the doctrine of *res ipsa loquitur*.   Count Twenty-One should be dismissed.

### 3.   Motion to Dismiss for violation of Fed. Civ. P. 8(e)(1).

The Complaint should be dismissed in its entirety in that the averments are not simple, concise and direct, but are instead composed of nearly all evidentiary allegations.  Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint. See, *McHenry v. Renne,* 84 F.3d 1172, 1179-1180 (9th Cir. 1996).

4.     **Motion to Dismiss for violation of Fed. R. Civ. P. 8(a).**

The Complaint, over fifty pages long, should be dismissed as an excessive violation of Rule

8(a).  Egregious violations of Rule 8's "short and plain" requirements may justify dismissal *with*

*prejudice.*  See *McHenry v. Renne,*  84 F.3d 1172, 1179-1180 (9ᵗʰ Cir. 1996).  Rule 8(e) "applies to

good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6).  See, *Simmons*

*v. Abruzzo,* 49 F.3d 83 (2ⁿᵈ Cir. 1995).

5.     **Motion to Dismiss Claims For Lack of Subject Matter Jurisdiction Rule
12(b)(1), Or Alternatively, Motion to Abstain From Exercising Subject Matter
Jurisdiction.**

The wholly insubstantial and frivolous nature of the federal claims herein, together with the

timing of the same (shortly after THE KENSINGTON's state court   filing), evidence that

MERGET's action is reactionary, and that the intended federal claims have been made only for the

purpose of obtaining federal jurisdiction.  An  attempt to invoke federal jurisdiction under these

circumstances is improper, and dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate.  See, *Roberts*

*v. Corrothers,* 812 F.2d 1173, 1177 (9ᵗʰ Cir. 1987), quoting *Bell v. Hood,* 327 U.S. 678, 682-683,

66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).  Moreover, in that Plaintiff fails to state a cause of action

on any of his intended federal claims (Fair Housing Act, RICO, etc.), this court lacks subject matter

jurisdiction over this action.

Alternatively, to the extent not mooted by its determination of the legal issues raised above,

Defendants would request that this Court decline to exercise subject matter jurisdiction over this

case, and defer to the pending Florida state court proceeding in light of settled principals of comity

and abstention.  To determine whether circumstances exist such that a federal court may decline to

exercise jurisdiction under the doctrine of abstention, requires analysis of the following factors: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtain jurisdiction; (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights.  See, *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.* 460 U.S. 1, 15-16 (1983).  This list of factors, however, is not exhaustive.

The Supreme Court has also indicated that district courts should consider "the vexatious or reactive nature of either the federal or the state litigation" in determining whether to abstain. See, *Telesco v. Telesco Fuel and Masons' Materials, Inc.*, 765 F.2d 356, 363 (5th Cir. 1985).  Abstaining when litigation is reactive or vexatious further the important federal policy of prohibiting forum shopping. See, *Allied Machinery Serv. Inc. v. Caterpillar, Inc.,* 841 F. Supp. 406, 410 (S.D.Fla.1993).  The decision whether to stay or dismiss in favor of concurrent state court litigation does not rest on a mechanical checklist of factors, but on a careful balancing of the factors as they apply in a given case.  Weight given to any one factor may vary greatly from case to case.  See, *Moses H. Cone,* 460 U.S. at 16.

In turning now to address the factors relating to the instant case, it would appear that the first two factors are inapplicable; that is, neither the state court nor this Court have assumed jurisdiction over property, and the convenience of either forum, located in the same city, is the same for both parties.  However, the balance of the aforementioned factors clearly weigh in favor of this Court's declining jurisdiction.

### a. Avoiding Piecemeal Litigation.

Florida state law dictates that it is in error to stay a state action which is filed <u>before</u> a subsequently filed federal action relating to the same matter. See, *Sunshine State Serv. Corp v. Dove Invs. of Hillsborough*, 468 So.2d 281, (Fla. 5th DCA, rev. denied. 478 So.2d 53 (Fla. 1985), quashing a circuit court order staying a state court action pending disposition of respondent's *subsequently* filed action in federal court. See, also, *Sebor v. Rief*, 706 So. 2d 52 (Fla. 5th DCA 1998), holding that stay of first filed state case was not warranted pending resolution of subsequently filed related federal case involving federal and state claim. Therefore, as the state action will, in the absence of action from this court, likely proceed concurrently with this same action, same parties, and same subject matter, the risk of inconsistent rulings and piecemeal litigation is extraordinarily high.

### b. Order in Which Jurisdiction was Obtained.

There is no dispute that jurisdiction over the parties was first obtained by the state court.

### c. Adequacy of Each Forum to Protect Plaintiff's Rights.

There is no reason why the state court cannot fully and fairly adjudicate the claims of MERGET.

### d. Reactive and Vexatious Litigation/Forum Shopping.

The Supreme Court has stated that "the vexatious or reactive nature of either the federal or state litigation" is an important consideration in deciding whether to defer to a parallel proceeding See *Moses H. Cone,* 460 U.S. at 18.

When reviewing the facts before this Court, it seems inescapable that MERGET's filing in federal court could be borne of anything other than both forum shopping and "reactive litigation".

The timing of this suit, brought just thirteen days after the filing of the state court action, together with the highly personal and hurtful nature of the allegations contained within it, evidences that the action is both "reactive" and "vexatious". Moreover, the predominantly state law character of its claims, together with its numerous allegations regarding Plaintiff's concern over MOSS's purported "influence over local officials" strongly suggests forum shopping.

For the foregoing reasons, and to the extent not mooted by this Court's consideration of the other grounds articulated within this Motion, exceptional circumstances exist which warrant abstention and dismissal by this Court.

6. **Motion to Enjoin Defendant from Repeated Service of Process**

As indicated in the fact section, MERGET has served his original action on the Defendant four times. Defendants seek an order of this Court enjoining the abuse of service of process.

This Court has considerable discretion to curtail the litigating and filing of overly zealous *pro se* litigators. As stated by the Eleventh Circuit Court of Appeals in *Traylor v. City of Atlanta*, 805 F.2d 1420 (11th Cir. 1986).

> "Recently this Court dealt with the problems of the districts courts throughout the Circuit in attempting to stem the filing and litigations of patently frivolous lawsuits by overly litigious *pro se* litigators. *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986) (en banc). Although this Court did decline to design an injunction that would be appropriate in an effort to bar the filing of such litigation, we did hold that a district court has considerable discretion in restricting the filings of such a litigator. He may be "severely restricted as to what he may file and how he must behave in his applications for judicial relief."

MERGET's repeated use of service of process is abusive, improper and should be enjoined.

## CONCLUSION

Although Defendants are not unmindful of the more liberal pleading standard afforded *pro se* litigants (See, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) "even *pro se* pleadings must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *See, Brazil v. United States Dept. of Navy,* 66 F.3d 193, 199 (9th Cir. 1995). Court liberally construes *pro se* pleadings; liberal construction, however, will not relieve plaintiff of burden of presenting sufficient facts to state a legally cognizable claim. *White v. State of Colorado,* 82 F.3d 364, 365 (10th Cir. 1996).

With that in mind, it is not hyperbole to state that the instant Complaint is a monument to scandalous, redundant and nonsensical allegations. The sheer magnitude and scope of the frivolous allegations has already caused substantial damage to the Defendants, who have been forced to shoulder the onerous burden, and attendant expense in responding to them all. The defects of this Complaint appear on its face, and nothing more is required of this Court prior to its entry of an order dismissing this action.

Of course, while this Court need not pass on disputed facts prior to entering an order disposing of the Complaint, it is well settled that disputed facts will not prevent dismissal of claims under federal law that are:

1. Immaterial and made solely for the purpose of obtaining jurisdiction;

2. Wholly insubstantial or frivolous;

3. Foreclosed by prior case law which has settled the question; or

4. So patently without merit that it requires no meaningful consideration.

See *Bell v. Hood,* 327 U.S. 678, 682-683 (1946).

Defendants would contend that this Complaint falls squarely within each of the four categories set forth above. For these and all of the aforementioned reasons, the Complaint should be stricken and/or dismissed, with prejudice.

WHEREFORE, Defendants, GENE MOSS and THE KENSINGTON ASSOCIATES, request that the instant Complaint be dismissed, with prejudice, and for all such other and further relief that this court would deem just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this ___ day of June, 2003 to: Albert Merget, P.O. Box 5541 Sun City Center, Florida 33571.

> **MOMBACH, BOYLE & HARDIN, P.A.**
> Attorneys for Defendants
> 500 East Broward Boulevard
> Suite 1950
> Fort Lauderdale, Florida 33394
> Telephone: (954) 467-2200
> Telefax: (954) 467-2210
>
>
> By: _____
> Michael P. Hamaway, Esquire
> Florida Bar No: 0081302

.40 (Rev. 10/93) Summons in a    ion

# United States District Court

SOUTHERN ——————— DISTRICT OF —— FLORIDA

ALBERT MERGET  PRO SE

**SUMMONS IN A CIVIL CASE**

V.

GENE MOSS, individually and
KENSINGTON ASSOCIATES, a
Florida General Partnership,
d/b/a THE KENSINGTON

Defendants

CASE NUMBER: 03 ‑ 60896

34874 CIV-MARRA

MAGISTRATE JUDGE
SELTZER

#527

TO: (Name and address of defendant)

GENE MOSS c/o
The Kensington
1900 South Ocean Blvd.
Lauderdale by the Sea
Florida, 33062

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

ALBERT MERGET, pro se
Terrell Road, Box 482
LAMBERTVILLE, NEW JERSEY, 08530

CALENDARED

an answer to the complaint which is herewith served upon you, within 20 _____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clarence Maddox

_____
CLERK

C. Arnold

_____
(BY) DEPUTY CLERK

DATE  5/13/03

**EXHIBIT** ___A___

# United States District Court

305369

SOUTHERN —— DISTRICT OF —— FLORIDA

ALBERT MERGET
       PRO SE

## SUMMONS IN A CIVIL CASE

V.

GENE MOSS, individually and
KENSINGTON ASSOCIATES, a
Florida General Partnership,
d/b/a THE KENSINGTON

    Defendants

CASE NUMBER: **03 - 60896**

CIV-MARRA

TO: (Name and address of defendant)

GENE MOSS c/o
The Kensington
1900 South Ocean Blvd.
Lauderdale by the Sea
Florida, 33062

SERVED 6.11.03 9:40 Time MAGISTRATE SELTZER

R. Suss 314

Is A Sheriff Appointed Process Server In Good Standing
In Broward Co.

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

ALBERT MERGET, pro se
Terrell Road, Box 482
LAMBERTVILLE, NEW JERSEY, 08530

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Clarence M....

CLERK

(BY) DEPUTY CLERK

5/13/03

DATE

AO 440 (Rev. 10/93) Summons in a Civil Action



# United States District Court

SOUTHERN ———— DISTRICT OF  FLORIDA

ALBERT MERGET   pro se

V.

GENE MOSS, individually and
KENSINGTON ASSOCIATES, a Florida
General Partnership, d/b/a

THE KENSINGTON

Defendants

## SUMMONS IN A CIVIL CASE

CASE NUMBER:  GP.

03 - 60896

SERVED  Gene Moss

DATE  6-11-03  TIME  250p

PS

(Print / Sign Name)

CERTIFIED IN THE CIRCUIT COURT OF     OBTAIN
__ JUDICIAL CIRCUIT CERT. # _____

TO: (Name and address of defendant)

KENSINGTON ASSOCIATES, a
Florida General Partnership
d/b/a THE KENSINGTON
1900 South Ocean Blvd.
~~Lauderdale by the Sea,~~FLA. 33062
Pompano Beach

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

ALBERT MERGET, pro se
Terrell Road, Box 482
LAMBERTVILLE, NEW JERSEY 08530

an answer to the complaint which is herewith served upon you, within __20_____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clarence Maddox

_____
CLERK

_____
(BY) DEPUTY CLERK

DATE  5/13/03

1052597

AO 440 (Rev. 10/93) Summons in a Civil Ac.

# United States District Court

SOUTHERN ——— DISTRICT OF ——— FLORIDA

ALBERT MERGET          PRO SE

### SUMMONS IN A CIVIL CASE

V.

GENE MOSS,individually and
KENSINGTON ASSOCIATES, a
Florida General Partnership,
d/b/a THE KENSINGTON

Defendants

CASE NUMBER: 03 - 60896

TO: (Name and address of defendant)

GENE MOSS c/o
The Kensington
1900 South Ocean Blvd.
Lauderdale by the Sea
Florida, 33062

SERVED
DATE
PS Pennie Kidwell          TIME
Print / Sign Name
CERTIFIED IN THE CIRCUIT COURT OF
15 JUDICIAL CIRCUIT CERT. # 931

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

ALBERT MERGET, pro se
Terrell Road, Box 482
LAMBERTVILLE,NEW JERSEY,08530

an answer to the complaint which is herewith served upon you, within ___20___ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

CLERK                                              DATE    5/13/03

(BY) DEPUTY CLERK